UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DARRELL DENHAM | CIVIL ACTION NO. 06-246 |
| versus | JUDGE STAGG |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | **REFERRED TO:**<br>**MAGISTRATE JUDGE HORNSBY** |

**MEMORANDUM RULING**

**Introduction**

Darrell Denham ("Plaintiff") alleges that he became disabled due to stenosis of the spine. He has a twelfth grade education, one year of college and work experience in jobs including fireplace installer and industrial spray painter. Plaintiff was 46 years old when ALJ W. Thomas Bundy denied his claim.

Plaintiff was involved in a car accident in 2000 and began to experience back pain. Plaintiff later fell from a ladder and had an increase in his pain. Dr. Anil Nanda performed a decompressive lumbar laminectomy in April 2003. Dr. Nanda reported the following month that Plaintiff had "improved dramatically" since surgery and was walking well.

Plaintiff was treated before and after his surgery by Dr. Rel Gray, a family physician. Dr. Gray issued a letter in which he stated that Plaintiff had significant limitations. Dr. Robert Holladay, an orthopedic surgeon, conducted a consultative evaluation. He found limitations, but not to the extent stated in Dr. Gray's letter. The ALJ declined to afford controlling weight to Dr. Gray's opinion, and he afforded "significant weight" to Dr. Holladay's findings.

The ALJ determined that Plaintiff had a residual functional capacity ("RFC") for light work, reduced by the need to periodically alternate sitting and standing and an inability to perform more than occasional climbing, balancing, kneeling, crouching, squatting, crawling or stooping. A vocational expert ("VE") testified that a person with that RFC and Plaintiff's age, education and vocational factors could perform the demands of jobs that are available in significant numbers in the economy. The ALJ looked to that testimony, considered the Medical-Vocational Rules as a framework for decisionmaking, and found at step five of the sequential analysis that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff urges that the ALJ erred because (1) Dr. Gray's opinion is well supported by objective evidence, (2) Dr. Holladay's opinion is not supported by his own examination, and (3) the weight of Dr. Gray's opinion was wrongfully reduced based on evidence not in the record.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there

are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Dr. Gray's letter of February 5, 2004 recounted that Dr. Gray had seen Plaintiff in his office every four weeks in an effort to manage Plaintiff's pain. He wrote:

> Mr. Denham is now totally disabled and unable to do any substantial and meaningful work. He cannot lift any thing weighing more than 1 or 2 pounds. He might carry 5# at the most. He is uncomfortable both sitting and standing and has to alternate between the two approximately every five to ten minutes. .... With great effort he can walk with a limping and shuffling gait and frequent stops for approximately 100 yards. He cannot squat or stoop or bend to either side.

Tr. 160-61.

Dr. Holladay recorded that Plaintiff's complaints were focused on low back pain and that there was no evidence of radicular symptoms or complaints of buckling or weakness. Dr. Holladay recorded the results of a number of physical examinations and tests. He recorded that straight leg raising tests caused low back pain bilaterally sitting and lying to 75 degrees, "which is considered a negative test." Plaintiff demonstrated a "slow but normal gait" and showed good balance and the ability to walk without benefit of a cane or other aid. An X-ray showed evidence of the laminectomy, but alignment was good and there was no severe disk space narrowing or spur formation. Dr. Holladay concluded that Plaintiff could sit for 8 hours with usual rest breaks and could stand or walk for 6 hours in a work day with usual breaks. He recommended that Plaintiff avoid a lot of repetitive bending, particularly

lifting from the ground to waist height. He also stated that Plaintiff should avoid climbing ladders, though he could go up and down a flight of stairs occasionally. Tr. 186-93.

Plaintiff faults the ALJ for not analyzing each of the regulatory factors found in 20 C.F.R. § 404.1527(d)(2) before discounting Dr. Gray's opinion. Plaintiff bases the argument on Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), but the Fifth Circuit has since clarified that the six-factor review is required only when there is an absence of competing first-hand medical evidence. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003).

That is not to say that the opinion of a treating physician may be dismissed without explanation. Good cause is required before the ALJ may afford less, little or no weight to a treating physician's opinion. Good cause exceptions include opinions that are brief and conclusory, not supported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The ALJ is entitled to look to such factors and determine the credibility of physicians and weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ acknowledged that Dr. Gray had treated Plaintiff since 2001, but he observed that the limitations suggested by Dr. Gray were too restrictive considering the limited objective clinical findings. The ALJ pointed to Dr. Holladay's findings of no muscle atrophy, muscle loss, neurological deficits or other symptoms that might be expected in a person with the extraordinary limitations found by Dr. Gray. The ALJ also discussed the

possibility that a family physician will include a greater degree of limitation in his opinion in an effort to assist his patient and because patients are often insistent and demanding when they are seeking evidence to support their claims. The ALJ added that Dr. Gray "has a history of providing overly restrictive opinions in cases such as this, in which the objective findings are minimal." Tr. 22. The ALJ made those observations, to which Plaintiff objects, but in the following paragraph he stated that he was affording less weight to Dr. Gray's opinion because the limitations he suggested were not supported by objective clinical findings. And the ALJ did not entirely discount Dr. Gray's opinion. He merely stated that it "cannot be afforded controlling weight." Tr. 22.

To the extent the ALJ's observations about Dr. Gray's history or reputation may have been improper, an issued that is not decided, they are harmless under the circumstances. The written decision expressly rests the weight afforded Dr. Gray's decision on the lack of supporting objective findings. Plaintiff responds that Dr. Gray's records include 38 examples of positive straight leg raising tests and other observations following examinations. Plaintiff has not, however, identified any particular findings that would suggest the extraordinarily limited lifting and other limitations suggested by Dr. Gray. A positive straight leg raise test is an indication of a limitation, but it does not, alone, require the ALJ to accept as controlling the rather extraordinary limitations suggested by Dr. Gray.

Plaintiff urges that Dr. Holladay's opinion should not have been afforded significant weight. He argues that Dr. Holladay incorrectly interpreted a negative result for the straight

leg test that Dr. Holladay conducted. Plaintiff points to a publication by a physician which suggests an interpretation that would yield a positive result. The court need not address the issue of which physician's interpretation of the straight leg raising test is more appropriate, an area the court is not well equipped to enter. What is more important is that Dr. Holladay used what he observed when he conducted the test (pain at 75 degrees), along with his other personal observations, to gain his opinion of the extent of back and other pain that Plaintiff experienced. Dr. Holladay then used that information to give an opinion as to Plaintiff's ability to lift, stand and perform other exertional activities. Those ultimate findings of abilities and limitations, not whether a SLR test should be deemed positive or negative if pain is experienced at 75 degrees, are what is important in this proceeding.

Plaintiff also argues that Dr. Holladay's range of motion findings are inconsistent with the limitations he suggests. Both Dr. Holladay and the ALJ are better equipped than the court to interpret and apply the medical evidence. The ALJ examined the evidence, articulated reasons for the relative weight he afforded it, and reached a conclusion. The court has not observed any truly plain error that is obvious to a lay person and that would cast reasonable doubt on the ultimate decision. Under those circumstances, the ALJ's assessment and weight of the medical evidence is supported by substantial evidence and should not be second guessed by the judiciary. A judgment will be entered affirming the Commissioner's decision.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 12th day of March, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE